387 So.2d 485 (1980)
IN the INTEREST OF G.T., a Child.
No. 79-1372.
District Court of Appeal of Florida, Fourth District.
August 20, 1980.
*486 Richard L. Jorandby, Public Defender, and Anthony Calvello, Robert C. Fallon, Asst. Public Defenders, West Palm Beach, for appellant.
Jim Smith, Atty. Gen., Tallahassee, and Mark Horn, Asst. Atty. Gen., West Palm Beach, for appellee.
LETTS, Chief Judge.
This is an appeal from a denial of a motion to suppress, the appellant claiming lack of founded suspicion to stop and no probable cause to frisk. We agree there was no probable cause to frisk and reverse.
There is no transcript of the hearing on the motion to suppress, but all parties, pursuant to Fla.R.App.P. 9.200(b)(3), have agreed to the factual setting reproduced in toto as follows:
Eleanor Obenshin, employee of Dick's Florist was working alone in the shop on February 28, 1979. Two black males entered the fairly large store and began to look at the merchandise. When asked if she could help them, the males responded that they were just looking. Five to ten minutes later, Ms. Obenshin became apprehensive. She could not explain why; other than it was just a gut feeling she had. As a result, Ms. Obenshin summoned assistance.
Officers Sinnott and Albertas responded to the scene. Ms. Obenshin related her apprehensiveness to the police officers. Subsequently, Off. Sinnott asked the two black males if they were being helped. They responded that they were just looking. Officer Sinnott testified that one black male had his right hand in his pocket. As a result he asked the two black males to step outside; whereupon he conducted a pat down search of them. Officer Sinnott discovered that the same black male had a .22 calibre revolver in his right front pocket. The black male with the revolver was later identified as G.T., and his companion was B.H., both juveniles. Consequently, G.T. was arrested for carrying a concealed firearm as well as attempted robbery. Confessions were obtained from both juveniles.
B.H. testified that neither himself nor G.T. were acting in a suspicious manner while in the store. He testified that they were just looking around at the merchandise in the store both before and during the police officers arrival at the scene.
The result here hinges on Section 901.151, Florida Statutes (1979), our "Stop and Frisk Law."
Initially we are concerned with whether there were circumstances which reasonably indicated that the two youths were about to commit a violation of the *487 criminal laws of this State and we think there were. Judge Hurley, speaking for the Court, has recently exhaustively examined our current thinking on this subject, see In the Interest of G.A.R. II, a child, 387 So.2d 404 (Fla. 4th DCA 1980), and we do not propose to repeat it here. Suffice it to say that from the policeman's viewpoint there existed founded suspicion under all the circumstances sufficient to satisfy the criteria reported in Lachs v. State, 366 So.2d 1223 (Fla. 4th DCA 1979).
The policemen were called to the flower shop by the apprehensive employee to investigate two teenagers who had been hanging around for up to ten minutes for no apparent reason. Teenagers may often hang around a drug store, but it is rare indeed to find them doing so in a flower shop where at best they are incongruous. True, they may have a logical explanation, such as wanting to buy a plant for mother's birthday, but that does not negate a policeman's right to stop, ask questions and temporarily detain. We, therefore, hold the stop to be proper.
As to the frisk we must come to a different conclusion. Section 901.151 requires that before a pat down for a weapon may be conducted, the officer must have probable cause to believe the suspect is armed. That is statutory law by which we are bound and there is simply nothing in the instant set of stipulated facts that gives rise to probable cause to believe the youth was armed and we have no other record to resort to, to discover it.
The sole evidence is that one of the youths had "his right hand in his pocket." It may be that the policemen also saw a suspicious bulge, or that they thought the youth was armed because of the way he put his hand in his pocket, or something, or anything. Yet, if additional facts are in existence, the stipulated version does not provide them and we are totally unable to record approval of a pat down for weapons solely because citizens have their hands in their pockets, unless consent is first obtained during temporary detainment and questioning.[1]
Accordingly, as we said in Isham v. State, 369 So.2d 103, 104 (Fla. 4th DCA 1979) the officer, under the stipulated facts presented, "moved too fast" and the search was illegal.
REVERSED AND REMANDED.
DOWNEY, J., and GEIGER, DWIGHT L., Associate Judge, concur.
NOTES
[1] We are of the view that questioning could have included asking why the youth had his hand in his pocket.