504 So.2d 798 (1987)
STATE of Florida, Appellant,
v.
James D. RIEHL, Appellee.
No. 86-2106.
District Court of Appeal of Florida, Second District.
April 1, 1987.
Robert A. Butterworth, Atty. Gen., Tallahassee, and Lauren Hafner Sewell, Asst. Atty. Gen., Tampa, for appellant.
James Marion Moorman, Public Defender, and Stephen Krosschell, Asst. Public Defender, Bartow, for appellee.
SCHOONOVER, Judge.
The state appeals a trial court order granting defendant James D. Riehl's motion to suppress certain evidence seized from him and statements he made following *799 his arrest. The trial court granted the motion based upon its finding of lack of probable cause for defendant's arrest. We find that the facts and circumstances leading up to, and surrounding, the defendant's arrest provided probable cause to believe that the defendant was committing, or had committed, a crime. We, accordingly, reverse.
The defendant was charged by information with trafficking in cocaine in violation of section 893.135(1)(b), Florida Statutes (1985) and with use or possession with intent to use drug paraphernalia in violation of section 893.147, Florida Statutes (1985). After entering a plea of not guilty to the charges, the defendant filed a motion to suppress all tangible items of property seized from him and all statements made by him following his arrest. The motion alleged that the arresting officers lacked probable cause to arrest the defendant for possession of drug paraphernalia and that, therefore, the subsequent search of his person which produced forty-three grams of cocaine was not incident to a lawful arrest. The defendant also contended that any statements he made subsequent to his arrest were not freely and voluntarily given.
The only evidence presented at the hearing on defendant's motion was the testimony of the two arresting officers, Sarasota County Sheriff Deputies Jack Ellis and Shawn Snyder. Their testimony indicated that Deputy Ellis responded to a call from a night clerk at a gas station. He was informed that a subject had been inside the women's rest room for over an hour and had aroused the suspicions of the night clerk. Upon Deputy Ellis's arrival at the station, the clerk told him that he had knocked on the rest room door, but did not get a response. Deputy Ellis then knocked "loudly" on the door several times, identified himself, but also did not get a response. Deputy Ellis did, however, hear a "commotion" going on inside. When Deputy Snyder arrived shortly thereafter, Deputy Ellis knocked on the door again and said, "Open up." The defendant came out wearing a pair of running shorts. He was sweating profusely and was glassy eyed. Deputy Ellis testified that in his opinion, after twenty-nine years of law enforcement, the defendant was on a drug. Deputy Snyder agreed that the defendant's appearance upon exiting the rest room suggested that the defendant was under the influence of something.
Deputy Ellis then checked inside the rest room and found wet paper towels, four syringes, and a spoon in the trash. One syringe contained uncoagulated blood, another contained a yellowish liquid which had not evaporated, another syringe was empty, and the fourth one was not used and had a cap on it. Deputy Ellis at that time believed the defendant was in possession of drug paraphernalia and instructed Deputy Snyder to handcuff the defendant. Ellis then advised the defendant of his rights and asked him what he was doing there. The defendant responded that he was doing coke by injecting it into his wrist. The defendant was subsequently searched, and forty-three grams of cocaine were found in the crotch of his running shorts.
On cross-examination, Ellis acknowledged that he did not know how long it had been since the rest room had been cleaned, that no examination of the contents of the syringes was made prior to the defendant's arrest, and that he did not know whether anyone had examined the syringes for fingerprints. The officers noted that they found no insulin or any other substance which would suggest the syringes possibly had been used to administer a legal medication.
After argument of counsel, the trial court made the following comment:
Hindsight is almost better than foresight, but Mr. Riehl wasn't arrested for trespass nor for disorderly conduct nor for criminal mischief, but he was arrested according to the officer for possession of paraphernalia, narcotic paraphernalia, syringes found in the waste basket.
There is no way at this time we can say these weren't placed there by someone else and at what point in time.
Corporal Ellis did not say he was an expert, but I will give him a little leeway *800 as to why he would expect blood to be present as late as two or four hours or as long as the defendant was in the bathroom, which was an hour, and we have no evidence when the last time was that the bath room was cleaned nor when the waste basket was emptied.
The syringes could have been there earlier.
I have not heard any authority one way or the other, so based on my understanding of probable cause, I find the arrest not based on probable cause, and I will suppress the 43 grams and I will suppress his statement, but there is no expectation of privacy as to the syringes so the syringes will not be suppressed.
Following the trial court's entry of an order granting the defendant's motion, the state timely filed this appeal.
We realize that a trial court's ruling on a motion to suppress comes to this court with a presumption of correctness and that in testing the accuracy of the trial court's conclusion, we should interpret the evidence and all inferences capable of being drawn therefrom in a light most favorable to sustaining these conclusions. Wigfall v. State, 323 So.2d 587 (Fla. 3d DCA 1975). In this case, however, after affording the court's order this presumption, and after interpreting the evidence and all inferences capable of being drawn therefrom in a light most favorable to sustaining the trial court's conclusion, we still find that the court erred.
The trial court, on undisputed facts, simply found that no probable cause existed for the defendant's arrest. The record indicates that the court's conclusion was influenced by the fact that it could not rule out the possibility that the paraphernalia was placed in the public rest room by someone other than the defendant. In order to establish the probable cause necessary to make a valid arrest, however, it is not necessary to eliminate all possible defenses. Furthermore, the facts constituting probable cause need not meet the standard of conclusiveness and probability required of the circumstantial facts upon which conviction must be based. Lemus v. State, 158 So.2d 143 (Fla. 2d DCA 1963). All an officer needs in order to make an arrest is probable cause to believe that the suspect is committing or has committed a crime. § 901.15, Fla. Stat. (1985). Probable cause is evaluated from the viewpoint of a prudent cautious police officer on the scene at the time of the arrest. State v. Profera, 239 So.2d 867 (Fla. 4th DCA 1970). The question to be answered is whether the officer in the particular circumstances, conditioned by his observation and information, guided by the whole of his police experience, reasonably could have believed that a crime had been committed by the person to be arrested. Profera; see also, Draper v. United States, 358 U.S. 307, 79 S.Ct. 329, 3 L.Ed.2d 327 (1959). He need not actually see the law being violated nor must he satisfy himself beyond question that a crime has been committed. Russell v. State, 266 So.2d 92 (Fla. 3d DCA), cert. denied, 271 So.2d 140 (Fla. 1972).
The totality of the circumstances in this case was sufficient to provide the deputies reason to believe that the defendant had been in possession of drug paraphernalia in violation of section 893.147 and, therefore, furnished probable cause for them to arrest the defendant. A deputy with twenty-nine years of law enforcement experience was called to a gas station because defendant aroused the suspicions of a night clerk by staying in the women's rest room for over an hour and not answering knocks on the door. The defendant initially refused to respond or come out of the rest room. When he did, he was sweating profusely and was glassy eyed. Four syringes and a spoon, commonly associated with the use of drugs, were found almost contemporaneously with the defendant's exit from the rest room. One of the syringes contained uncoagulated blood and another a yellowish liquid. Based upon the above, the deputy had probable cause to believe, and did believe, that the defendant had committed a crime. The court, accordingly, erred in finding otherwise.
Since the defendant was validly arrested and the undisputed evidence indicates the *801 statements he gave were freely and voluntarily given after he had been advised of his rights, the court also erred in suppressing these statements.
We, accordingly, reverse and remand for proceedings consistent herewith.
Reversed and remanded.
SCHEB, A.C.J., and FRANK, J., concur.