616 So.2d 93 (1993)
STATE of Florida, Appellant,
v.
Lucy SAMPSON, Appellee.
No. 92-1177.
District Court of Appeal of Florida, Fifth District.
March 19, 1993.
Robert A. Butterworth, Atty. Gen., Tallahassee, and Nancy Ryan, Asst. Atty. Gen., Daytona Beach, for appellee.
James Dickson Crock, Daytona Beach, for appellee.
GOSHORN, Chief Judge.
In this appeal, the State argues that the suppression of evidence obtained pursuant to the arrest of Lucy Sampson was error because, under the totality of the circumstances, the police had probable cause to arrest Sampson. We agree and reverse.
The State charged Sampson with one count of being a principal to a sale of *94 cocaine.[1] Sampson filed a motion to suppress the evidence obtained pursuant to her arrest on the ground that the police had no probable cause to arrest her. At the suppression hearing, Detective Mark Barker of the Holly Hill Police Department related the events surrounding Sampson's arrest. Detective Barker testified that he first learned of Sampson through a confidential informant (CI), who had provided reliable information in previous cases. Detective Barker testified that the CI told him that Larry Kodak, an old friend of the CI, said that Sampson had cocaine to sell.
As a result of this information, Detective Barker went to a position down the street from the CI's house and saw Sampson and Kodak walk to the front door and go inside. Detective Barker then talked to the CI on the telephone and learned that Sampson and Kodak had brought cocaine to sell. Detective Barker told the CI to arrange with Sampson to meet the CI and Detective Barker at a car wash parking lot later that evening to sell cocaine.
As previously arranged, Detective Barker went to the car wash and waited for the CI. Shortly after the CI arrived and parked next to Detective Barker, Sampson drove up with Kodak as the passenger. Kodak got out of the car alone and approached Detective Barker and the CI. Kodak and Detective Barker then began negotiating for the sale of cocaine. When Detective Barker asked about the quality of the cocaine, Kodak went back to the driver's side of the car to talk to Sampson. Detective Barker testified that he could not hear anything they said and that he did not see any cocaine exchanged. However, upon returning, Kodak showed the cocaine to Detective Barker, who then paid Kodak. Detective Barker testified that during the transaction, Kodak indicated that the cocaine belonged to Sampson. Detective Barker also testified that he did not see any money exchanged between Kodak and Sampson.
After the transaction, Detective Barker radioed to other officers to stop the car and to arrest both Kodak and Sampson. About three blocks from the car wash, the police stopped and arrested both occupants. Upon searching Sampson's person, the police found the $160 that Detective Barker had paid Kodak for the cocaine. After the arrest, Sampson made several incriminating statements and then took the police to her home, where she gave them six grams of cocaine that she had in a housecoat pocket.
Kodak also testified at the hearing on Sampson's motion to suppress. Kodak testified that he was painting a room in Sampson's house, when Sampson approached him and asked if he knew anyone who wanted to buy some cocaine that she had for sale. Kodak contacted an old friend about Sampson's cocaine, without knowing that his friend was a CI for the police. Kodak testified that he and Sampson went to the CI's house to sell cocaine and agreed to meet the CI later at the car wash to sell cocaine to a friend of the CI. Kodak further testified that Sampson drove him to the car wash and asked him to conduct the sale. Kodak testified that he approached Detective Barker and they began negotiating. When Detective Barker wanted to see the cocaine, Kodak testified that he went back to the car to get the cocaine from Sampson and that Sampson gave him the cocaine. Kodak also stated that after the transaction was over, Kodak returned to the car and gave the money from the sale to Sampson.
After hearing the testimony, the trial court granted Sampson's motion to suppress finding that Detective Barker did not have independent knowledge of the CI's information and that the trial court could not rely on the officer's testimony concerning the CI's information because the CI did not testify at the hearing. Although the trial court did not discredit the officer's testimony concerning Kodak's statement that the cocaine belonged to Sampson, the trial court ultimately found that Kodak was an unreliable informant, and therefore, Detective Barker could not rely on Kodak's statement alone to justify arresting Sampson. *95 Without the information from the CI and from Kodak, the trial court found that Detective Barker witnessed nothing other than purely innocent activity by Sampson, and thus, the officer did not have probable cause to arrest Sampson. Based on its findings, the trial court suppressed the money, statements, and cocaine obtained pursuant to Sampson's arrest.
We begin our analysis by noting that for purposes of making an arrest without a warrant, an officer needs probable cause to believe that the suspect is committing or has committed a crime. See § 901.15, Fla. Stat. (1989). Probable cause for an arrest does not require the officer to see the suspect actually violating the law or to determine beyond question that the suspect is committing or has committed a crime. See State v. Riehl, 504 So.2d 798 (Fla. 2d DCA), review denied, 513 So.2d 1063 (Fla. 1987). Statements by another suspect can provide sufficient probable cause for an arrest in certain circumstances. See State v. Dean, 532 So.2d 712 (Fla. 5th DCA 1988), review denied, 542 So.2d 1333 (Fla. 1989) (finding that the police had probable cause to arrest an individual whom the police had just seen talking to a known drug dealer in an area known for drug sales, when a woman arrested for a weapon violation told the police that the individual had cocaine in his possession); Lima v. State, 458 So.2d 422 (Fla. 2d DCA 1984) (finding that the police had probable cause to arrest an individual who was present in a house where and when a drug transaction took place and when an accomplice identified the individual as the drug supplier).
For determining probable cause, the question is whether under the facts of the case, the officer reasonably believed that the suspect had committed a crime, given the officer's observations, information, and experience at the time of the arrest. Draper v. United States, 358 U.S. 307, 313, 79 S.Ct. 329, 333, 3 L.Ed.2d 327 (1959); State v. Profera, 239 So.2d 867, 868-69 (Fla. 4th DCA 1970). In Illinois v. Gates, 462 U.S. 213, 230-31, 103 S.Ct. 2317, 2328, 76 L.Ed.2d 527 (1983), the United States Supreme Court rejected formal and rigid requirements for determining probable cause in situations involving informants and instead adopted a totality of the circumstances approach. However, the Gates court noted that the informant's reliability and knowledge are important factors to consider in determining whether probable cause exists in a particular case. Id.
In State v. Maya, 529 So.2d 1282, 1285 (Fla. 3d DCA 1988), the court applied the totality of the circumstances test established in Gates. In Maya, the police acted on information concerning an impending drug transaction from a first-time caller by going to the location indicated by the caller, where the police independently observed two individuals transfer a brown grocery bag containing a Tupperware-type container from one car to another, which was consistent with the caller's information. Id. 529 So.2d at 1283-84. The Maya court found that even if the information from the unidentified informant, who did not testify at the suppression hearing, and the independent observations of the police were each insufficient standing alone to establish probable cause, the combination of both under the totality of the circumstances was sufficient to establish probable cause because the information and the observations validated the reliability of each other on the key issue of whether the suspects were involved in a drug transaction. Id. at 1285-86.
In State v. Diaz, 474 So.2d 903 (Fla. 5th DCA 1985), this court addressed a situation similar to the instant case. In Diaz, the police witnessed noncriminal activity that corroborated information from an informant personally known to the police as a reliable source. Id. at 905-06. The Diaz court held that probable cause existed to arrest the suspects under the facts of the case because a known and reliable informant provided information to the police regarding the suspects and the police personally observed the events that the informant had said would occur. Id.
In the instant case, the undisputed facts from the suppression hearing are that a known and reliable CI gave Detective Barker information that Sampson had cocaine for sale. Detective Barker told the CI to arrange a transaction with Sampson at a car wash. Although Detective Barker never saw cocaine or money exchanged between *96 Kodak and Sampson, Kodak and Sampson arrived at the car wash as previously arranged by the CI, and during the transaction, Kodak stated that the cocaine belonged to Sampson.
As a result, the record supports the State's argument that the police had probable cause to arrest Sampson. Under the totality of the circumstances approach as applied in Maya and Diaz, the combination of the information provided by the CI that Sampson had cocaine to sell and the independent observations of the police that the drug transaction occurred as arranged by the CI, was sufficient to establish probable cause in this case. Similarly, the statement by Kodak during the transaction that the cocaine belonged to Sampson, when Sampson drove Kodak to the meeting place for the transaction, was also sufficient to establish probable cause. See Dean, 532 So.2d at 713; Lima, 458 So.2d at 422. Accordingly, we hold that under the totality of the circumstances in this case, the trial court erred by finding that the police did not have probable cause to arrest Sampson and by suppressing the evidence obtained pursuant to Sampson's arrest.
REVERSED and REMANDED.
HARRIS and GRIFFIN, JJ., concur.
NOTES
[1] §§ 777.011, 893.13(1)(a)(1), Fla. Stat. (1989).